**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **PATRICK OROZCO, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**EVENTLINK LLC,**<br><br>**Defendant** | **Index No.: 7:26-cv-3943**<br><br>**COLLECTIVE AND CLASS ACTION** |

Plaintiff, Patrick Orozco, individually and on behalf of all others similarly situated, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover unpaid overtime wages and other damages for Plaintiff and his similarly situated co-workers who traveled and worked at EventLink LLC's ("EventLink or Defendant") customers' events and who were paid on a day rate basis (hereinafter "Day Rate Workers"). Such Day Rate Workers include but are not limited to drivers and logistics personnel.

2. Eventlink is a leading experiential marketing agency that handles marketing for a wide variety of Fortune 500 companies throughout the United States. In sum, clients hire Eventlink to put on various in-person events in all types of settings.

3. Founded in 2009, Eventlink has consistently grown its operations by purchasing other marketing companies and continued diversification of the clients it services.[1] What began with largely servicing automotive companies, Eventlink has diversified itself into servicing

[1] About, Eventlink Website (*available at* https://www.eventlinkgroup.com/about/) (last accessed May 11, 2026

companies such as Nordstrom, Amazon, VML, Camping World, Deep Eddy Vodka, NBC Sports, GE Healthcare, and US Bank.

4. Eventlink has its corporate headquarters at 5500 18 Mile Road, Sterling Heights, Michigan 48314. Its central website – www.eventlinkgroup.com – also touts additional offices located at 150 N. Railroad Avenue, Northlake, Illinois 60164; 20 Harmich Road, South Plainsfield, New Jersey 07080; 2760 Junipero Avenue, Signall Hill, California 90755; 807 Broadway St. NE, Suite 200, Minneapolis, Minnesota 55413; and 2-5168 Everest Drive, Mississauga, Ontario, Canada.[2]

5. One aspect of Eventlink's business revolves around marketing services it offers to major automotive companies, such as Ford, General Motors, BMW, Toyota, Nissan, Chevrolet Cadillac, and Buick/GMC.

6. In order to offer its services, Eventlink employs hundreds of W2 employee drivers and logistics personnel it sends to its customers' events who are responsible for setting up events and driving motor vehicles for demonstrations. For instance, drivers can and do drive car models on closed and open tracks for such demonstrations. Drivers also take attendees of the events in test rides as requested by Eventlink's customers.

7. Such work assignments are throughout the United States. For instance, during his employment, Orozco performed work for Eventlink in the states of New York, California, Georgia, Nevada, Texas, and Indiana, just to name a few.

8. Despite having non-exempt primary duties, Eventlink does not pay its Day Rate Workers overtime. Specifically, Eventlink only pays this workforce on a day rate basis regardless of the hours they work.

[2] About, Eventlink Website (*available at* https://www.eventlinkgroup.com/about/) (last accessed May 11, 2026).

9. Day Rate Workers regularly work over 40 hours per week due to the nature of the work assigned. For instance, while on assignment, there are generally no days off. So, for example, when Plaintiff was assigned to a three-week tour, all days were work days. Plaintiff normally started his workday between 5:30 to 6:45 am and worked through 3:30 to 6:00 pm, depending on the assignment.

10. These tours are largely assigned from spring to fall each year, with winter months generally off.

11. Despite Day Rate Workers working over 40 hours per week while on assignment, Eventlink only pays them on a day rate basis. For example, Plaintiff received $340 per day while on assignment, with a $175 day rate for travel days and $50 *per diem* payments.

12. Eventlink did not pay any overtime pay for hours worked over 40 in a workweek.

13. Additionally, given the needs of their work schedules, Day Rate Workers did not regularly receive rest and uninterrupted meal breaks.

14. Eventlink failed to keep accurate records of hours worked by Plaintiff and other Day Rate Workers.

15. For the time Plaintiff worked in New York, Eventlink failed to provide him and other Day Rate Workers any wage notices required by the "New York Labor Law" ("NYLL").

16. Additionally, Eventlink failed to provide Plaintiff and Day Rate Workers with accurate wage statements, as Plaintiff's wage statements failed to properly list all compensable work time as they do not list any hours worked, nor do they contain any notation of overtime hours worked or paid.

17. Plaintiff relied on his paystubs to ensure that Eventlink paid him the correct rate(s) for the correct hours he worked.

18. Due to Defendant providing pay stubs that incorrectly listed hours worked, Plaintiff and other Day Rate Workers were unable to recognize the underpayment of wages they suffering. Plaintiff and other Day Rate Workers were misinformed about the correct number of hours they worked and their rate(s) of pay, and thus, they were deprived of the information necessary for reviewing their wages and hours worked, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

19. Eventlink's incorrect wage statements allowed it to continue its unlawful wage and hour scheme without Plaintiff's and other Day Rate Workers' awareness that they were being underpaid.

20. Had Plaintiff and Day Rate Workers been able to see that they were not being lawfully paid via their statement notices, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

21. Plaintiff's inability to crosscheck his pay statements constitutes concrete harm.

22. Eventlink's failure to provide Plaintiff and Day Rate Workers with such information caused them to endure uncertainty regarding their wages and prevented them from taking action to correct Eventlink's wage and hour violations as they had no means to confirm that they were being compensated in accordance with the terms of their employment.

23. Plaintiff brings this action on behalf of himself and similarly situated current and former Day Rate Workers who elect to opt in to this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour

provisions of the FLSA by Eventlink that have deprived Plaintiff and others similarly situated Day Rate Workers of their lawfully earned wages.

24. Plaintiff also brings this action on behalf of himself and similarly situated current and former Day Rate Workers who worked in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

25. Plaintiff also brings this action on behalf of himself and similar situated current and former Day Rate Workers who worked in California pursuant to Rule 23 to remedy violations of the California Labor Code §§ 204, 1194, 510 and applicable California Wage Orders (the "CA Labor Code").

26. Plaintiff also brings this action on behalf of himself and similar situated current and former Day Rate Workers who worked in Indiana pursuant to Rule 23 to remedy violations of the Indiana Minimum Wage Law of 1965 and Indiana Wage Payment Statute, I.C. § 22-2-2-1 *et seq.* ("IN Wage Laws").

27. Plaintiff also brings this action on behalf of himself and similar situated current and former Day Rate Workers who worked in Nevada pursuant to Rule 23 to remedy violations of the Nevada Labor Code, NRS § 608.005 *et seq.* ("NV Wage Laws").

## THE PARTIES

**Plaintiff**

**Patrick Orozco**

28. Patrick Orozco ("Orozco") is an adult who is a resident of the State of California.

29. Orozco was employed as a W2 Driver by Eventlink from approximately May 2022 through July 22, 2025.

30. In this role, Orozco worked for Eventlink throughout the United States, including, but not limited to, in the States of New York, California, Georgia, Nevada, Texas, and Indiana.

31. Orozco is a covered employee within the meaning of the FLSA, NYLL, the CA Labor Code, IN Wage Laws, and NV Wage Laws.

32. A written consent form for Orozco is being filed with this Complaint.

**Defendant**

**Eventlink LLC**

33. Eventlink LLC is a foreign for-profit limited liability corporation organized and existing under the laws of Michigan.

34. Eventlink LLC's principal corporate headquarters is located at 45500 18 Mile Road, Sterling Heights, Michigan 48314.

35. Eventlink LLC's registered agent with the Corporations Division of the State of Michigan is "The Corporation Company" 40600 Ann Arbor Road E Suite 201, Plymouth, Michigan 48170.

36. The registered office mailing address in the Michigan Corporations Division is 5500 18 Mile Road, Sterling Heights, Michigan 48314.

37. Eventlink LLC has deliberately and voluntarily engaged in business in the State of New York by offering organizing and servicing events within its borders.

38. Eventlink LLC is the corporate payor that appears on Plaintiff's pay stubs.

39. Eventlink LLC is a covered employer within the meaning of the FLSA, NYLL, the CA Labor Code, IN Wage Laws, and NV Wage Laws, and at all times relevant, it employed Plaintiff and similarly situated employees.

40. At all times relevant, Eventlink LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

41. Eventlink LLC applies the same employment policies, practices, and procedures to all Day Rate Workers in its operation, including policies, practices, and procedures with respect to the payment of overtime compensation.

42. Eventlink LLC has employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

43. Upon information and belief, at all relevant times Eventlink. LLC has had an annual gross volume of sales in excess of $500,000.00.

**JURISDICTION AND VENUE**

44. This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331.

45. The United States District Court for the Southern District of New York has personal jurisdiction over Eventlink as it has purposefully availed itself of the benefits of doing business in New York State. In other words, Eventlink has sufficient minimum contacts for this Court to have personal jurisdiction over it.

46. This Court also has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 as Orozco's state law claims are so related to his federal wage claims in that they form part of the same case or controversy under Article III.

47. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Orozco performed work in Monticello, New York (Sullivan County) and thus, a substantial part of the events or omissions giving rise to this case occurred therein.

## COLLECTIVE ACTION ALLEGATIONS

48. Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of:

> All current and former Day Rate Workers employed by Eventlink who worked in New York state between May 12, 2023 and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

49. Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and the FLSA Collective for their overtime compensation owed.

50. Consistent with Defendant's policies, patterns, or practices, Plaintiff and the FLSA Collective were not paid the premium overtime compensation for all hours worked beyond 40 per workweek.

51. All of the work that Plaintiff and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

52. As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the premium overtime wages for all hours worked in excess of 40 hours per workweek.

53. A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

54. Defendant knew or should have been aware that federal law required it to pay Plaintiff and the FLSA Collective overtime compensation for all hours worked in excess of 40 per workweek.

55. Defendant failed to undertake any diligent review of its wage and hour practices relating to Day Rate Workers.

56. Defendant did not consult with counsel regarding their wage and hour practices relating to Day Rate Workers.

57. Defendant instituted the decision to pay Day Rate Workers with a day rate in order to reduce their labor costs.

58. As a result, Defendant acted willfully due to their reckless disregard of their conduct.

59. There are many similarly situated current and former Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

**The New York Class**

60. Plaintiff brings the Second, Third, and Fourth Causes of Action, NYLL claims, under Rule 23 on behalf of himself and the class of persons consisting of:

> All current and former Day Rate Workers paid a day rate employed by Eventlink in New York between September 26, 2019[3] and the date of the final judgment in this matter (the "NYLL Class").

61. The NYLL Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

62. There are more than fifty members of the NYLL Class.

[3] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

63. Plaintiff's claims are typical of those claims that could be alleged by any NYLL Class member, and the relief sought is typical of the relief which would be sought by each NYLL Class member in separate actions.

64. Plaintiff and the NYLL Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all of the NYLL Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the NYLL Class members.

65. Plaintiff is able to fairly and adequately protect the interests of the NYLL Class members and have no interests antagonistic to the NYLL Class members.

66. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

67. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

68. Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and the NYLL Class members individually and include, but are not limited to, the following:

a. Whether Defendant correctly compensated Plaintiff and the NYLL Class for hours worked in excess of 40 hours per workweek.

b. Whether Defendant failed to furnish Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by the NYLL;

c. Whether Defendant failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL; and

d. Whether Defendant kept accurate time records for Plaintiff and the NYLL Class.

**The California Class**

69. Plaintiff brings the Fifth, Sixth, and Seventh Causes of Action, California Labor Code claims, under Rule 23 on behalf of himself and the class of persons consisting of:

> All current and former Day Rate Workers paid a day rate employed by Eventlink in California between May 12, 2022 and the date of the final judgment in this matter (the "CA Class").

70. The CA Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

71. There are more than fifty members of the CA Class.

72. Plaintiff's claims are typical of those claims that could be alleged by any CA Class member, and the relief sought is typical of the relief which would be sought by each CA Class member in separate actions.

73. Plaintiff and the CA Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all of the CA Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the CA Class members.

74. Plaintiff is able to fairly and adequately protect the interests of the CA Class members and have no interests antagonistic to the CA Class members.

75. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

76. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

77. Common questions of law and fact exist as to the CA Class that predominate over any questions only affecting Plaintiff and the CA Class members individually and include, but are not limited to, the following:

a. Whether Defendant correctly compensated Plaintiff and the CA Class for hours worked in excess of 40 hours per workweek.

b. Whether Defendant correctly compensated Plaintiff and the CA Class for hours worked in excess of 8 hours per day.

c. Whether Defendant provided uninterrupted regular meal periods to Plaintiff and the CA Class and whether premium wages were paid where such meal periods were not provided;

d. Whether Defendant provided proper rest periods during workdays and whether premium wages were paid where such rest periods were not provided;

e. Whether Defendant provided timely and accurate itemized wage statements in compliance with the CA Labor Code and relevant Wage Orders;

f. Whether Defendant kept accurate time records for Plaintiff and the CA Class.

**Indiana Class Allegations**

78. Plaintiff brings the Eighth Cause of Action, Indiana Wage Law claims, under Rule 23 on behalf of himself and the class of persons consisting of:

> All current and former Day Rate Workers paid a day rate employed by Eventlink in Indiana between May 12, 2023 and the date of the final judgment in this matter (the "IN Class").

79. The IN Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

80. There are more than fifty members of the IN Class.

81. Plaintiff's claims are typical of those claims that could be alleged by any IN Class member, and the relief sought is typical of the relief which would be sought by each IN Class member in separate actions.

82. Plaintiff and the IN Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all of the IN Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the IN Class members.

83. Plaintiff is able to fairly and adequately protect the interests of the IN Class members and have no interests antagonistic to the IN Class members.

84. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

85. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

86. Common questions of law and fact exist as to the IN Class that predominate over any questions only affecting Plaintiff and the IN Class members individually and include, but are not limited to, the following:

a. Whether Defendant correctly compensated Plaintiff and the IN Class for hours worked in excess of 40 hours per workweek;

b. Whether Defendant kept accurate time records for Plaintiff and the IN Class.

**Nevada Class Allegations**

87. Plaintiff brings the Ninth Cause of Action, Nevada Wage Law claims, under Rule 23 on behalf of himself and the class of persons consisting of:

> All current and former Day Rate Workers paid a day rate employed by Eventlink in Nevada between May 12, 2024 and the date of the final judgment in this matter (the "NV Class").

88. The NV Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

89. There are more than fifty members of the NV Class.

90. Plaintiff's claims are typical of those claims that could be alleged by any NV Class member, and the relief sought is typical of the relief which would be sought by each NV Class member in separate actions.

91. Plaintiff and the NV Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected all of the NV Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each of the NV Class members.

92. Plaintiff is able to fairly and adequately protect the interests of the NV Class members and have no interests antagonistic to the NV Class members.

93. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

94. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

95. Common questions of law and fact exist as to the NV Class that predominate over any questions only affecting Plaintiff and the NV Class members individually and include, but are not limited to, the following:

a. Whether Defendant correctly compensated Plaintiff and the NV Class for hours worked in excess of 40 hours per workweek;

b. Whether Defendant kept accurate time records for Plaintiff and the NV Class.

## PLAINTIFF'S FACTUAL ALLEGATIONS

96. Consistent with their policies and patterns or practices as described herein, Defendant harmed Plaintiff, individually, as follows:

**Patrick Orozco**

97. Orozco was employed as a W2 driver by Eventlink from approximately May 2022 through July 22, 2025.

98. In this role, Orozco worked for Eventlink throughout the United States, including, but not limited to, in the States of New York, California, Georgia, Nevada, Texas, and Indiana.

99. Orozco worked along side similarly situated Day Rate Workers subjected to the same pay practices as him.

100. Orozco would work for Eventlink for approximately 6 months per year, normally from Spring through Fall during his employment.

101. Throughout his employment, unless he missed time for vacation, sick days, or holidays, Orozco generally worked the following schedule:

a. While on assignment, all days were work days.

b. Workdays generally started from 5:30am to 6:45 am and went through 3:30 to 6:00 pm, depending on the assignment.

c. Assignments generally lasted anywhere between 2 weeks up to a month.

102. As means of an example, Orozco's final assignment was scheduled from July 6, 2025 through July 26, 2025. During this assignment, Orozco worked 7 days per week with daily shifts starting from 5:30-6:45 am through 3:30-6:00 pm.

103. Given the needs of the job, Orozco did not receive uninterrupted rest and meal breaks.

104. Given the above work schedules, Orozco regularly worked over 40 hours per week during his employment.

105. For this work Orozco received a day rate of $340 per day, travel pay of $175 per day, and per diem of $50 per day.

106. Orozco did not receive extra overtime pay for all hours worked over 40 in a workweek.

107. Eventlink was on actual and/or constructive notice of the hours Orozco was made to work.

108. Eventlink failed to keep accurate records of time worked by Orozco.

109. Orozco did not receive any wage notice that accurately reflected his method of compensation.

110. Orozco received wage statements that did not accurately record the hours he worked.

111. As a direct result of Eventlink's violations and failure to provide proper wage notices and wage statements, Orozco suffered a concrete harm, resulting from his inability to identify the underpayment of wages he was made to suffer. Specifically, without a wage notice properly identifying his method of compensation, he was unable to recognize that form of

underpayment of owed overtime. Additionally, receiving pay stubs that do not accurately record hours or his correct hourly and overtime rates of pay further prevented him from recognizing the underpayment of wages he suffered during his employment.

112. Eventlink's inaccurate wage notice and wage statement allowed it to continue its unlawful wage and hour scheme without Orozco having awareness he was misclassified and underpaid.

113. Had Orozco been able to see that he was not being lawfully paid via his statements and notice, he would have been able to avoid underpayment of their wages. *See Guthrie*, 113 F.4th at 308 (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd*., No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

114. Orozco's inability to crosscheck his pay statements and notice constitutes concrete harm.

115. Eventlink's failure to provide Orozco with such information caused him to endure uncertainty regarding his wages and prevented him from taking action to correct Defendant's wage and hour violations as he had no means to confirm that he was being compensated correctly.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

116. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendant and protect Plaintiff and the members of the FLSA Collective.

118. Defendant failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

119. As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

120. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

121. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant and protect Plaintiff and the NYLL Class.

122. Defendant failed to pay Plaintiff and the NYLL Class the premium overtime wages to which he was entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per

workweek.

123. Due to Defendant's violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Class)**

124. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

125. Defendant failed to supply Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as his primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

126. Due to Defendant's violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendant failed to provide him with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

127. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

128. Defendant failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

129. Due to Defendant's violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendant failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**FIFTH CAUSE OF ACTION**
**Failure to Pay Overtime Wages**
**Pursuant to CA Labor Code §§ 510 and 558**
**(on behalf of Plaintiff and the CA Class)**

130. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

131. The overtime wage provisions of the CA Labor Code - § 510 – along with relevant California IWC Wage Orders apply to Defendant and protect Plaintiff and the CA Class.

132. Defendant failed to pay Plaintiff and the CA Class the premium overtime wages to

which he was entitled under the CA Labor Code – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per workweek.

133. Defendant likewise failed to pay Plaintiff and the CA Class the premium overtime wages to which he was entitled under the CA Labor Code – at a rate of 1.5 times his regular rate of pay – for all hours over 8 in any given workday.

134. Defendant has knowingly and willfully refused to perform its obligation to provide Plaintiff and the CA Class with full and timely premium wages for all overtime work.

135. Defendant is liable to Plaintiff and putative Class members alleged herein for the unpaid overtime and civil penalties, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs.

**<u>SIXTH CAUSE OF ACTION</u>**
**Failure to Authorize and Permit and/or Make Available Meal and Rest Periods**
**Pursuant to CA Labor Code §§ 226.7, 512, and 558**
**(on behalf of Plaintiff and the CA Class)**

136. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

137. Defendant routinely fails to authorize, permit and/or make available complaint meal periods to Plaintiff and the CA Class. Defendant also routinely failed to allow Plaintiff and the CA Class to record their meal periods.

138. Plaintiff's and the CA Class's schedules regularly prevent them from taking first meal periods and, when applicable, second meal periods throughout the day. Plaintiff and the CA Class do not receive the timely and full requisite premium pay for their missed first and second meal breaks as required by California law.

139. Labor Code §§ 226.7 and 512 and the applicable Wage Orders require Defendant to authorize and permit meal periods and rest periods to its employees. Labor Code §§ 226.7 and

512 and the Wage Orders prohibit employers from employing an employee for more than five (5) hours without a meal period of not less than thirty minutes, and from employing an employee more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty minutes. Section 226.7 and the applicable Wage Orders also require employers to authorize and permit employees to take ten minutes of net rest time per four hours or major fraction thereof of work, and to pay employees their full wages during those rest periods. Labor Code § 558 required employers to comply with the Wage Orders.

140. Unless the employee is relieved of all duty during the thirty-minute meal period and ten-minute rest period, the employee is considered "on duty" and the meal period or rest period is counted as time worked under the applicable Wage Orders

141. Under Labor Code § 226.7(b) and the applicable Wage Orders, an employer who fails to authorize, permit, and/or make available a required meal period must, as compensation, pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period was not authorized and permitted. Similarly, an employer must pay an employee denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the required rest period was not authorized and permitted and/or not made available.

142. Despite these requirements, Defendant has knowingly and willfully refused to perform their obligations to authorize and permit and/or make available to Plaintiff and the CA Class the ability to take the timely and full off-duty meal and rest periods to which they are entitled.

143. Defendant has also failed to pay Plaintiff and the CA Class one (1) hour of pay for each day an off-duty meal and/or rest period was denied, short, or late. Defendant's conduct described herein violates Labor Code §§ 226.7 and 512. Therefore, pursuant to Labor Code §

226.7(b), Plaintiff and putative Class members are entitled to compensation for the failure to authorize and permit and/or make available timely and full off-duty meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit

**SEVENTH CAUSE OF ACTION**
**Failure to Provide Accurate Itemized Wage Statements**
**Pursuant to CA Labor Code § 226**
**(on behalf of Plaintiff and the CA Class)**

144. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

145. Defendant does not provide timely, accurate itemized wage statements to Plaintiff and putative Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders. The wage statements Defendant provides its employees, including Plaintiff and CA Class Members, do not timely and accurately reflect all hours actually worked, actual gross wages earned and/or actual net wages earned, including minimum wages and overtime. In addition, the wage statements Defendant provides to its employees do not include full and timely premium pay for missed first and/or second meal periods or for rest periods, or do not reflect such pay in the full amounts owed and when owed.

146. Defendant is liable to Plaintiff and the CA Class for the amounts described above in addition to the civil penalties set forth below, with interest thereon. Furthermore, Plaintiff is entitled to an award of attorneys' fees and costs as set forth below, pursuant to Labor Code § 226(e).

**<u>EIGHTH CAUSE OF ACTION</u>**
**Failure to Provide Overtime Wages**
**Pursuant to Indiana Wage Payment Statute, I.C. § 22-2-5-1 et seq.**
**(on behalf of Plaintiff and the IN Class)**

147. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

148. The overtime wage provisions of IN Wage Laws – IC § 22-2-5-1 et seq., and its supporting regulations apply to Defendant and protect Plaintiff and the IN Class.

149. Defendant failed to pay Plaintiff and the IN Class the premium overtime wages to which he was entitled under IN Wage Laws – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per workweek.

150. Defendant's actions and/or omissions were not in good faith.

151. Due to Defendant's violations of IN Wage Laws, Plaintiff and the IN Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by IN Wage Laws, and reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest as provided by law.

**<u>NINTH CAUSE OF ACTION</u>**
**Failure to Provide Overtime Wages**
**Pursuant to NV Wage Laws – Nev. Rev. Stat. § 608.011 et seq.**
**(on behalf of Plaintiff and the NV Class)**

152. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

153. The overtime wage provisions of NV Wage Laws – Nev. Rev. State. § 608.011 et seq., and its supporting regulations apply to Defendant and protect Plaintiff and NV Class.

154. Plaintiff has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev.

2017).

155. Defendant failed to pay Plaintiff and the NV Class the premium overtime wages to which he was entitled under NV Wage Laws – at a rate of 1.5 times his regular rate of pay – for all hours worked beyond 40 per workweek. *See* Nev. Rev. Stat. § 608.018(2).

156. Defendant regularly, willfully, and repeatedly failed to make, keep, and preserve accurate time records required by NRS § 608.115.

157. Defendant's actions were willfully oppressive, fraudulent and malicious, entitling Plaintiff and the NV Class to punitive damages.

158. Defendant's violations were intentional.

159. In accordance with N.R.S. 608.140, Plaintiff provided a pre-suit demand letter seeking class wages owed to Defendant at least 5 days prior to bringing this suit.

160. Accordingly, Plaintiff and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the FLSA Collective and the respective Classes, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Day Rate Workers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked at Eventlink in New York. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper

wages;

B. Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff Patrick Orozco as the representative of the NY, CA, IN, and NV Classes, and counsel of record as Class Counsel;

E. Unpaid overtime wages and liquated damages as permitted by law pursuant to New York Labor Law;

F. Statutory penalties of fifty dollars for each workweek that Defendant failed to provide Plaintiff with a proper wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

G. Statutory penalties of two hundred fifty dollars for each workweek that Defendant failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

H. All unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs pursuant to the CA Labor Code;

I. All unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs pursuant to IN Wage Laws;

J. All unpaid wages, overtime, liquidated damages, penalties, interest, attorneys' fees and costs pursuant to NV Wage Laws;

K. Reasonable attorneys' fees and costs of the action; and

L. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
May 12, 2026

Respectfully submitted,

/s/ Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Joseph A. Fitapelli
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and*
*the Putative Collective and Classes*

FAIR LABOR STANDARDS ACT CONSENT

1. I consent to be a party plaintiff in a lawsuit against EVENTLINK and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

2. By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 40% of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

DocuSigned by:
FE1D7094BC51411...

Signature

patrick orozco

Full Legal Name (Print)